[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT BY BELL ATLANTIC YELLOW PAGES f/k/a NYNEX
The plaintiff, Automotive Technologies, Inc. (hereinafter "ATI" d/b/a The Car Phone Store) is a franchisor that provides services to its franchisees, who are the other plaintiffs in this case. The defendant, Southern New England Telephone Company (hereinafter "SNET") is a telephone company serving the State of Connecticut. SNET publishes telephone directories for the area in which it provides telephone service. The defendant, Bell Atlantic Yellow Pages, f/k/a NYNEX (hereinafter "NYNEX") is in the business of publishing telephone directories including directory advertising often called "Yellow Pages" advertising. ATI by agreement with the other plaintiffs was to design, create and place yellow pages advertisements through SNET in NYNEX directories.
SNET and NYNEX had entered into an agreement under which each party would be required to publish yellow page advertisements submitted by the other for the other's customers. This was entitled the "Out-of-Area-Agreement" which was dated June 6, 1989 (hereinafter "OAA").
On or about December 26, 1995, ATI ordered the placement of advertisements for Rhode Island and Massachusetts through SNET to be published in NYNEX. In March 1996, NYNEX advised SNET that it was not publishing the advertisements submitted to it in the directories of April 1996 to April 1997. Plaintiffs subsequently brought suit against SNET and NYNEX claiming loss of profits and loss of sales as a result of the failure to publish their advertisements in the 1996-97 NYNEX directories. SNET filed a Cross-Claim against NYNEX.
On August 13, 2002, NYNEX made the instant motion for summary judgment as to the Second, Third and Fourth Counts of the Complaint and as to the Cross-Claim of SNET. Briefs were filed by all of the parties. The Second CT Page 3824 Count is for Breach of Contract of the OAA, the plaintiffs claiming to be third party beneficiaries of said contract; the Third Count being a claim against NYNEX for tortious interference with a contractual relationship between ATI and the other plaintiffs; and the Fourth Count being a claim against NYNEX for Violation of the Connecticut Unfair Trade Practices Act ("CUTPA").
Hearings were held before this Court on January 13, 2003 and February 10, 2003. Since SNET was not represented at the hearing of January 13, 2003, this Court gave SNET two weeks in which to file additional memoranda, affidavits, etc. SNET filed a brief and supplemental briefs, and NYNEX filed briefs in response.
 STANDARD OF REVIEW
A trial court may appropriately render summary judgment when the documents submitted demonstrate that there is no genuine issue of material fact remaining between the parties and that the moving party is entitled to judgment as a matter of law. Burns v. Hartford Hospital,192 Conn. 451, 455 (1984); Bartha v. Waterbury House Wrecking Co.,190 Conn. 8, 11 (1983).
A party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact. Dougherty v. Graham,161 Conn. 248, 250 (1971). To satisfy this burden, the movant must make a showing that it is quite clear what the truth is and that there is no doubt as to the existence of a genuine issue of material fact. Plouffev. New York, New Haven and H.R. Company, 160 Conn. 482, 488 (1971). The test has been said as one "in deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. [T]he test is whether a party would be entitled to a directed verdict on the same facts." Cummings and Lockwood v. Gray,26 Conn. App. 293, 296-97 (1991).
 FINDINGS
If a contract's language is clear and unambiguous, the interpretation of a contract is a question of law for the court. Connecticut NationalBank v. Douglas, 221 Conn. 530, 545 (1992). The Court finds the language to be clear and unambiguous and will, therefore, interpret same.
1. It is well settled that where the contract's language is clear and unambiguous, the contract shall be given effect according to its terms, e.g. Tallmadge Bros. v. Iroquois Gas Transmission Sys., 252 Conn. 479,499 (2000); Wallace v. 600 Partners Co., 86 N.Y.2d 543, 547, 658 N. A.2d CT Page 3825 715, 717 (1995).
2. The Court finds the contract, OAA, to be clear and unambiguous. Paragraph 1 states as follows:
1. Publisher will accept advertising applications from seller, on a non-exclusive basis, on behalf of advertisers (i) who are not located in the areas served by classified directories published by publisher primarily for local distribution, and (ii) who are not presently serviced by publishers, local sales force or local sales agent, subject to the following terms and conditions.
Seller is SNET and publisher is NYNEX. The parties have orally stipulated that the advertisers for whom Automotive Technologies, Inc. is the representative are located in the area served by NYNEX for local distribution and are presently serviced by publisher's local sales forces and local sales agents. This flies directly in contravention to the above paragraph 1, and for this reason alone, there is a breach of contract by SNET.
3. Paragraph 1(a) of the OAA reads as follows:
(a) Seller shall use the attached application form containing the terms and conditions governing the advertiser's application for advertising. Seller agrees to obtain the publisher's written consent prior to altering the terms of the application form.
It was agreed by the parties in oral argument before this Court that SNET did not use the attached application form which is the NYNEX form and not the SNET form.
Further, however, paragraph 1(a) does have the effect of incorporating by reference, although those words are not specifically used, the NYNEX application form.[1]
4. Section 2 of the NYNEX application form includes the following:
Section 2: NYNEX Not Bound to Publish. I understand that this Application is not an agreement by NYNEX to publish my advertising and NYNEX may choose not to publish my advertising. I also understand that NYNEX will be bound by this Application only when NYNEX publishes my advertising. If NYNEX does not publish my advertising, it will refund any money I previously paid for the advertising and have no further obligation to me. CT Page 3826
This clearly excuses NYNEX from any obligation to publish the advertising. It may seem that this an unfair portion of the contract (OAA), but SNET and NYNEX are two very sophisticated corporations which have long had dealing with each other and certainly are competent to recognize the pros and cons of any agreement before signing same.
5. Defendant SNET which has also filed a cross-complaint against NYNEX has pointed to Section 1(h) in claiming that NYNEX had a duty to notify SNET promptly if it was not going to publish the advertisements. Section 1(h) reads as follows:
"(h) Publisher reserves the right to refuse any advertising submitted which does not conform to publisher's Guidelines, or as to which the application form is not in order. Publisher will advise seller of theunacceptability of such advertising." (Emphasis added).
The Court finds that this section is not applicable to this case. The refusal to publish had nothing to do with whether the advertising conformed to publisher's guidelines or as to whether the application form was in order. The main reason for refusing the advertising is that SNET violated Section 1 of the OAA in that the advertisers were located in the areas served by classified directories published by publisher primarily for local distribution, and the advertisers were presently serviced by publisher's local sales force or local sales agent. There is no requirement that notification be given and under Section 2 of the NYNEX application form which the Court has found to be part of the OAA, which section is set forth above, there is no requirement of notification.
Further, this Court finds that the plaintiffs are not Third-Party Beneficiaries of the OAA. It is well-settled law that a party cannot sue for breach of contract if he is neither a party to a contract nor a contemplated beneficiary thereof. The only way a contract can create a direct obligation between a promisor and a third-party beneficiary is where the contracting parties actually intend to take on a direct obligation to the third party. Gazo v. City of Stamford, 255 Conn. 245,261 (2001). "The ultimate test to be applied in determining whether a person has a right of action as a third party beneficiary is whether the intent of the parties to the contract was that the promisor should assume a direct obligation to the third party beneficiary and that intent is tobe determined from the terms of the contract read in the light of thecircumstances attending its making, including the motives and purposes ofthe parties." (Emphasis added).
The intent of the contracting parties is to be ascertained by the ordinary meaning of the written words of the contract. Lawson v. Whitey'sCT Page 3827Frame Shop, 241 Conn. 678, 686 (1997). A third party beneficiary claim under New York law was rejected because the intent to benefit a third party was not found on the face of the agreement. In Re Gulf Oil/City'sService Tender Offer Litig., 725 F. Sup. 712, 733 (S.D.N.Y. 1989).
This Court concludes that there is nothing in the OAA to suggest that NYNEX and SNET intended for NYNEX to assume a direct obligation to plaintiffs. This is another reason why the plaintiffs' claim must fail.
Accordingly, this Court finds that there was no breach of contract by NYNEX of the OAA, and in fact there were breaches of the OAA by SNET. The plaintiffs' claims must fail because any contractual rights that they might have had was through their arrangement with SNET which in turn violated the contract with NYNEX.
SNET has claimed that a course of conduct between NYNEX and SNET overcomes the breaches of contract. There may be some evidence of NYNEX allowing the SNET application form to be used in the past. However, SNET has not produced any evidence to show a course of conduct that is contrary to the provisions of Paragraph 1 of the OAA. There is no evidence that NYNEX ever accepted advertising on behalf of either the plaintiffs or SNET who are located in the areas served by classified directories published by NYNEX primarily for local distribution and there is no evidence that NYNEX accepted advertising on behalf of advertisers who were being presently serviced by NYNEX's local sales force or local sales agent. Course of conduct has not been sufficient to overcome SNET's violation of Paragraph 1 aforementioned of the OAA. Summary Judgment isgranted to NYNEX on the Second Count of the complaint against it, namelyBreach of Contract.
6. The Third Count claims tortious interference with a contractual right against NYNEX. The claim is that NYNEX breached the contract with SNET. It is further claimed that NYNEX had knowledge of the arrangement between SNET and ATI and its franchisees. This claim must fail because the Court has found that there was no breach of contract by NYNEX, and no evidence has been produced to the effect that NYNEX had knowledge of any contract between ATI and its franchisees.
7. The Fourth Count against NYNEX is a count for Violation of the Connecticut Unfair Practices Act (CUTPA). Based upon the stipulations of the parties, there is no evidence that NYNEX engaged in unfair or deceptive practices. Accordingly, this claim must fail.
8. SNET has brought a cross-complaint against NYNEX claiming inter alia that NYNEX failed to perform the OAA and breached it. Suffice it to say CT Page 3828 that the main claim in this cross-complaint is that NYNEX breached its agreement with SNET under the OAA. The Court has already found that it was SNET who violated the OAA and not NYNEX.
9. It is true that SNET has submitted, by affidavit and by deposition transcript, evidence that there was a prior course of conduct which superceded the requirement in the OAA that applications for advertising are to be submitted on a NYNEX application form. This could be considered an issue of fact, and assuming, arguendo, that it is an issue of fact, could serve to deny summary judgment if that were the only alleged breach of contract. However, there is still evidence that paragraph 1 of the OAA was violated by SNET. The evidence is clear that advertising applications were submitted by SNET for companies who were located in the areas served by classified directories published by NYNEX primarily for local distribution. The course of conduct argument by SNET fails because paragraph 16 of the Supplemental Affidavit of Kenneth E. Wilson, Jr. dated February 24, 2003 refers to advertisements accepted and published in the 1996-97 NYNEX directories. In order to be a prior course of conduct, the overlooking of paragraph 1 of the OAA had to occur prior to December of 1995, and SNET in said paragraph 16 describes the 1996-97 directory. This Court concludes that there is no evidence of any prior course of conduct by the parties sufficient to overcome paragraph 1 of the OAA which was clearly violated by SNET.
Paragraph 12 of said affidavit claims that the directories for Attleboro, Massachusetts and Pawtucket, Rhode Island should have been accepted because the advertiser was Automotive Technologies, Inc. of Wethersfield, Connecticut.[2] This overlooks the fact that the advertisements were for a store at 17 Washington Street, South Attleboro, Massachusetts which is in the area served by NYNEX directories for local distribution. The fact that the billing was to be to ATI is irrelevant to the fact that the advertiser, in the South Attleboro situation, was Genesis Communications Corporation which was operating or was to operate a car phone store in South Attleboro, Massachusetts. Genesis is one of the plaintiffs in this action and was located in an area served by classified NYNEX directories published primarily for local distribution. As for Pawtucket, Rhode Island which application allegedly was attached to the aforementioned affidavit as Exhibit D, said attachment is missing from the affidavit. However, based upon the complaint, the franchisee and plaintiff is Low Ban Cellular, Inc. with a car phone store located in the Providence-Pawtucket NYNEX directory; so, this advertising also violates paragraph 1 of the OAA.
10. Finally, even though course of conduct may have allowed the submission of applications on a SNET form instead of a NYNEX form, the CT Page 3829 NYNEX form is incorporated by reference, as the Court has previously found, into the OAA, and, therefore, the provisions of the NYNEX application are still binding to both parties. Section 2 of the NYNEX form aforementioned clearly states that any application is not an agreement by NYNEX to publish the advertising, NYNEX may choose not to publish the advertising, and NYNEX will be bound by the application only when NYNEX publishes the advertising. This alone is sufficient to release NYNEX from obligations under the Agreement.
 CONCLUSION
There are no disputed issues of material fact, and NYNEX is entitled to judgment as a matter of law. The Motion for Summary Judgment of NYNEX dated August 13, 2002 as to the Second, Third, and Fourth Counts of the Complaint and as to the Cross-Claim of SNET is hereby GRANTED.
Rittenband, JTR